UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | Case No. 1:20-cr-424 |
| Plaintiff, : | |
| : | |
| vs. : | OPINION & ORDER |
| : | [Resolving Doc. 134] |
| MARGARET COLE, : | |
| : | |
| Defendant. : | |

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

The United States indicted Defendant Margaret Cole for conspiring to defraud the United States and indicted Cole for alleged false statements to an adoption accrediting entity and a Polish government agency.[1] After the trial of this case had been continued significantly beyond the Speedy Trial parameters, the Court set a February 9, 2022, trial date.

The Court plans to call COVID-19 fully vaccinated jurors.[2] Defendant Cole objects to this jury selection plan, arguing that the Sixth Amendment and the Jury Selection and Service Act do not allow the Court to exclude unvaccinated jurors.[3] The government opposes Defendant Cole's motion.[4]

The Court heard argument from both sides at a hearing on Defendant Cole's motion.[5]

For the reasons presented below, the Court **OVERRULES** Defendant Cole's objections and **DENIES** Defendant Cole's motion to stay the proceedings.

I.  Background

---

[1] Doc. 1-2.
[2] The Court adopts the Centers for Disease Control and Prevention (CDC)'s definition of "fully vaccinated:" "Fully vaccinated means a person has received their primary series of COVID-19 vaccines." *Stay Up to Date with Your Vaccines*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/stay-up-to-date.html (last visited Feb. 3, 2022).
[3] Doc. 134.
[4] Doc. 141.
[5] Unofficial Transcript of Hearing as to Margaret Cole, *United States v. Cole*, No. 1:20-cr-00424, at 43:17-57:24 (N.D. Ohio Feb. 1, 2022).

Case No. 1:20-cr-424
Gwin, J.

Two years into the COVID-19 pandemic, Northern District of Ohio community virus transmission remains high.[6] Last month, the Delta and Omicron variants caused an infection surge, driving up hospitalizations in Ohio to record-setting levels.[7]

In the face of the ongoing COVID-19 threat, vaccines supply critical protections against infection, and particularly against hospitalization, serious illness, and death. According to the Centers for Disease Control and Prevention (CDC), vaccines "reduce the risk of COVID-19, including the risk of severe illness and death among people who are fully vaccinated."[8]

While breakthrough infections remain possible for fully vaccinated people, "evidence from real-world vaccine effectiveness studies show that COVID-19 vaccines help protect against COVID-19 infections, with or without symptoms."[9] "Even when people who are fully vaccinated develop symptoms of COVID-19, they tend to be less severe than in people who are unvaccinated."[10]

Over the course of the pandemic, district courts have adopted a variety of courthouse safety measures to prevent the spread of COVID-19: mask requirements, symptom screening, increased physical distancing, air purification systems, plexiglass barriers, and more.[11] Numerous courts nationwide have also chosen to call only vaccinated jurors in order to

---

[6] *COVID-19 Dashboard: Current Trends*, https://coronavirus.ohio.gov/wps/portal/gov/covid-19/dashboards/current-trends (last visited Feb. 3, 2022).
[7] *Ohio Expands COVID-19 Testing Locations with Support from Ohio National Guard*, https://governor.ohio.gov/wps/portal/gov/governor/media/news-and-media/ohio-expands-covid-19-testing-locations-with-support-from-ohio-national-guard-1-3-2022 (last visited Feb. 3, 2022).
[8] *COVID-19 Vaccines Work*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last visited Feb. 3, 2022).
[9] *Id.*
[10] *Id.*
[11] *United States v. Tagliaferro*, 531 F. Supp. 3d 844, 849 (S.D.N.Y. 2021); *United States v. Schwartz*, 19-20451, 2021 WL 5283948, at *1-2 (E.D. Mich. Nov. 12, 2021); *United States v. Sapalasan*, 318CR00130TMBMMS, 2021 WL 2080011, at *2 (D. Alaska May 24, 2021).

-2-

Case No. 1:20-cr-424
Gwin, J.

reduce the risk of COVID-19 transmission and the accompanying disruptions during trials.[12]

The Northern District of Ohio is following safety precautions because of "the continued threat to public health and safety currently posed by COVID-19."[13] Visitors must pass a symptom screening to enter the courthouse.[14] Everyone who enters the courthouse must wear a face covering and must comply with judges' face covering instructions during court proceedings.[15]

Jury trials present added health and safety concerns because jurors spend many hours near each other and near to everyone else in the courtroom. To reduce the risk of COVID-19 transmission and to prevent trial disruptions, this Court will summon only vaccinated jurors for Defendant Cole's trial.

Defendant Cole objects to the jury selection plan, arguing that the Sixth Amendment requires the Court to include unvaccinated jurors in the jury pool.[16] The government opposes Defendant Cole's objection, arguing that the jury selection plan is constitutional and consistent with the Jury Selection and Service Act.[17]

## II. Legal Standard

"The Sixth Amendment secures to criminal defendants the right to be tried by an impartial jury drawn from sources reflecting a fair cross section of the community."[18] While defendants "are not entitled to a jury of any particular composition," jury selection plans

---

[12] *United States v. Moses*, 6:19-CR-06074 EAW, 2021 WL 4739789, at *5 (W.D.N.Y. Oct. 12, 2021); *United States v. Elias*, 18-CR-33 (S-2) (NGG), 2022 WL 125721, at *6 (E.D.N.Y. Jan. 13, 2022); *Schwartz*, 2021 WL 5283948, at *4; *United States v. Muhammad*, 3:21CR34 (DJN), 2021 WL 4471594, at *3-4 (E.D. Va. Sept. 29, 2021).
[13] United States District Court for the Northern District of Ohio, Amended General Order No. 2020-08, at 1 (Jan. 6, 2022).
[14] *Id.* at 2.
[15] *Id.*
[16] Doc. 134 at 1.
[17] Doc. 141 at 1.
[18] *Berghuis v. Smith*, 559 U.S. 314, 319 (2010).

Case No. 1:20-cr-424
Gwin, J.

"must not systematically exclude distinctive groups in the community."[19]

The Jury Selection and Service Act codifies the fair cross-section right and establishes procedures for challenging a jury selection plan.[20] As relevant here, the Act provides that "no person or class of persons shall be disqualified, excluded, excused, or exempt from service as jurors" as long as they meet the minimum juror qualifications.[21] A court may exclude a potential juror, however, if that person's "service as a juror would be likely to disrupt the proceedings."[22]

In *Duren v. Missouri*, 439 U.S. 357 (1979), the Supreme Court established the test for fair cross-section challenges under the Sixth Amendment and the Jury Selection and Service Act.

To show a prima facie violation of the fair cross-section requirement, a criminal defendant must show "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process."[23]

If the defendant shows all three prongs of the prima facie case, the burden shifts to the government to show that a "significant state interest" justifies the jury exclusion at issue.[24]

III.     Discussion

---

[19] *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975).
[20] 28 U.S.C. § 1861.
[21] 28 U.S.C. § 1866(c).
[22] *Id.*
[23] *Duren v. Missouri*, 439 U.S. 357, 364 (1979).
[24] *Id.* at 368.

Case No. 1:20-cr-424
Gwin, J.

### a. Unvaccinated Jurors Are Not a Distinctive Group

Under the first *Duren* prong, Defendant Cole must show "that the group alleged to be excluded is a 'distinctive' group in the community."[25]

Multiple district courts have already concluded that unvaccinated jurors are not a distinctive group for purposes of the fair cross-section analysis.[26] This Court agrees with the reasoning in those cases. Defendant Cole does not show that unvaccinated jurors are a distinctive group.

#### i. Supreme Court Standards Defining a Distinctive Group

The Supreme Court has not defined "distinctive group," but has developed certain criteria through its fair cross-section cases.[27] The "wholesale exclusion" of groups defined by "race, gender, or ethnic background" violates the Sixth Amendment.[28] By contrast, excluding potential jurors based on a shared belief—such as strong opposition to the death penalty—does not exclude a "distinctive group."[29]

The Supreme Court has also stated that courts should look to the "purposes of the fair cross-section requirement" when considering whether a group is distinct: "1) "guarding against the exercise of arbitrary power;" (2) "preserving public confidence in the fairness of the criminal justice system," and (3) promoting the value that "sharing in the administration of justice is a phase of civic responsibility."[30]

To apply those factors, courts look to whether a jury selection procedure excludes

---

[25] *Id.* at 364.
[26] *United States v. Moses*, 6:19-CR-06074 EAW, 2021 WL 4739789, at *3-4 (W.D.N.Y. Oct. 12, 2021); *United States v. Elias*, 18-CR-33 (S-2) (NGG), 2022 WL 125721, at *4-5 (E.D.N.Y. Jan. 13, 2022).
[27] *Lockhart v. McCree*, 476 U.S. 162, 174 (1986) (plurality opinion).
[28] *Id.* at 175 (citing *Peters v. Kiff*, 407 U.S. 493 (1972); *Duren v. Missouri*, 439 U.S. 357 (1979); *Castaneda v. Partida*, 430 U.S. 482 (1977)).
[29] *Id.* at 174.
[30] *Id.* at 174-75 (quoting *Taylor*, 419 U.S. at 530-31) (alteration mark omitted).

Case No. 1:20-cr-424
Gwin, J.

jurors based on an "immutable characteristic" or whether the jury selection procedure distinguishes based upon an "attribute that is within the individual's control."[31] Excluding jurors for an immutable characteristic is more likely to create an "appearance of unfairness."[32] Courts also consider whether a restriction eliminates jurors "for reasons completely unrelated to the ability of members of the group to serve as jurors in a particular case."[33]

### ii. No Distinctive Group Through Shared Beliefs

Unvaccinated jurors are not a distinctive group under any of the criteria the Supreme Court has established. Excluding unvaccinated jurors does not result in "wholesale exclusion" of any group defined by race, gender, or ethnicity. Excluding unvaccinated jurors also does not exclude jurors for an immutable characteristic. Over the past year, more than 200 million people in the United States have shifted from "unvaccinated" to "vaccinated," and individuals continue to take vaccinations every day.[34]

Defendant Cole argues that unvaccinated jurors are a distinctive group because they share a common belief: suspicion towards government-provided information.[35] But individuals may delay or decline vaccination for a wide variety of reasons, including medical conditions, fear of injection needles, concerns about potential side effects, exposure to misinformation, moral views, indifference towards COVID-19 risks, or limited transportation access.[36]

---

[31] *Id.* at 175-76.
[32] *Id.* at 175.
[33] *Id.*
[34] *COVID-19 Vaccinations in the United States*, https://covid.cdc.gov/covid-data-tracker/#vaccinations_vacc-total-admin-rate-total (last visited Feb. 3, 2022); *Trends in Number of COVID-19 Vaccinations in the US*, https://covid.cdc.gov/covid-data-tracker/#vaccination-trends (last visited Feb. 3, 2022).
[35] Unofficial Transcript of Hearing as to Margaret Cole, *United States v. Cole*, No. 1:20-cr-00424, at 50:22-25 (N.D. Ohio Feb. 1, 2022); Doc. 134 at 6.
[36] *What Is Vaccine Confidence?*, https://www.cdc.gov/vaccines/covid-19/vaccinate-with-confidence/building-trust.html (last visited Feb. 3, 2022) ("Many factors influence vaccine decision-making, including cultural, social, and

Case No. 1:20-cr-424
Gwin, J.

Defendant Cole's own evidence illustrates the varied influences on vaccine attitudes. She cites statistics showing racial disparities in vaccination, then cites articles suggesting that political partisanship defines vaccine attitudes.[37] Defendant Cole then cites another article stating that "[t]he biggest vaccination gap isn't based on race or partisanship. It's based on class."[38] In arguing these inconsistent motivators, Cole undercuts any claim that unvaccinated are a distinctive social group.

Even if Defendant Cole could show that all unvaccinated individuals share a single belief, a shared belief is not enough to show a distinctive group. In *Lockhart v. McCree*, 476 U.S. 162 (1986), the Supreme Court found that jurors who strongly oppose the death penalty are not a distinctive group.[39] Even though death penalty opposition was obviously more relevant to sitting on a death-penalty case, the Court said that the jurors could be struck for cause.

Likewise, even if all unvaccinated individuals are suspicious of government-provided information, that shared attitude would not define unvaccinated individuals as a distinctive group.

### iii. No Distinctive Group Through Vaccination as Proxy for Group Status

Defendant Cole points to racial disparities in vaccination levels to argue that excluding unvaccinated jurors violates the Sixth Amendment.[40] But Defendant Cole does not supply reliable data or show sufficient disparities to show that vaccination status operates

---

political factors, individual and group factors, and vaccine-specific factors."); *Strategies for Reaching People with Limited Access to COVID-19 Vaccines*, https://www.cdc.gov/vaccines/covid-19/vaccinate-with-confidence/limited-access.html (last visited Feb. 3, 2022); *Trends in COVID-19 Vaccine Confidence in the US*, https://covid.cdc.gov/covid-data-tracker/#vaccine-confidence (last visited Feb. 3, 2022).

[37] Doc. 134-1 at 25-32, 34, 43, 146.
[38] *Id.* at 150.
[39] *Lockhart*, 476 U.S. at 183-84.
[40] Doc. 134 at 3.

Case No. 1:20-cr-424
Gwin, J.

as a race proxy.

Statistics on vaccinations by race and ethnicity are incomplete. According to the CDC, race and ethnicity data is unavailable for over 20% of partially or fully vaccinated individuals nationwide.[41] Other courts considering challenges like Defendant Cole's have concluded that the available statistics are insufficient to find that vaccination status is a proxy for race.[42]

Given the incomplete vaccination statistics, the Court does not find that vaccination levels operate as a proxy for race.

### b. Defendant Cole Does Not Show Systematic Underrepresentation

Defendant Cole does not present arguments on the second or third *Duren* prongs. Her incomplete vaccine racial disparity data falls well short of the second prong standard because "*Duren* claims typically require 'very detailed information' and opinions from expert witnesses to demonstrate underrepresentation."[43]

But even if Defendant Cole had presented sufficient evidence that the vaccination requirement excludes Black jurors at a level significant enough to meet the second *Duren* prong, her argument would fail on the third *Duren* prong. The third prong "requires a showing that 'the underrepresentation is due to the system of jury selection itself, rather than external forces.'"[44]

---

[41] *Demographic Trends of People Receiving COVID-19 Vaccinations in the United States*, https://covid.cdc.gov/covid-data-tracker/#vaccination-demographics-trends (last visited Feb. 3, 2022).

[42] *Moses*, 2021 WL 4739789 at *4 ("This speculative assertion is insufficient to demonstrate a violation of the fair cross-section requirement."); *see also Elias*, 2022 WL 125721, at *5 ("Nor is there information sufficient to persuade the court that vaccination status is a proxy for a characteristic of a distinctive group, like race, gender, or ethnicity, such that exclusion of unvaccinated jurors would be a proxy for excluding a distinctive class.").

[43] *United States v. Muhammad*, 3:21CR34 (DJN), 2021 WL 4471594, at *2 (E.D. Va. Sept. 29, 2021) (quoting *Faulds v. United States*, 2013 WL 5460631, at *17 (C.D. Ill. Oct. 1, 2013)).

[44] *Elias*, 2022 WL 125721 at *5 (quoting *United States v. Schulte*, S3 17 CR. 548 (PAC), 2021 WL 1146094, at *7 (S.D.N.Y. Mar. 24, 2021)).

-8-

Case No. 1:20-cr-424
Gwin, J.

The COVID-19 pandemic is an external force on the court system.[45] The Court must adopt safety measures for in-person trials in response to that external force.

### c. The Government Interest in Preventing the Spread of COVID-19

Defendant Cole does not make out a prima facie case of a Sixth Amendment violation because she does not satisfy any part of the *Duren* test. Even if Defendant Cole could make that showing, the jury vaccination requirement would still be lawful because dropping this restriction would be "incompatible with a significant state interest."[46]

As the Supreme Court has observed, "[s]temming the spread of COVID–19 is unquestionably a compelling interest."[47] The recent spike in cases caused by the Omicron variant confirms the importance of vaccination as a tool to reduce health risks.[48] This Court has an obligation to impose safety measures to protect Defendant Cole, jurors, witnesses, attorneys, court staff, and members of the public.

### d. The Court's Plan Conforms with the Jury Selection and Service Act

The Court also finds that the jury selection plan follows the Jury Selection and Service Act because unvaccinated jurors would be likely to disrupt the proceedings.

The Jury Selection and Service Act allows jury selection plans that exclude jurors whose service "would be likely to disrupt the proceedings."[49]

The Court finds that unvaccinated jurors would be likely to disrupt the proceedings.[50]

---

[45] *Id.*
[46] *Duren,* 439 U.S. at 368.
[47] *Roman Catholic Diocese of Brooklyn v. Cuomo,* 141 S. Ct. 63, 67 (2020).
[48] *Omicron Variant: What You Need to Know,* https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html (last visited Feb. 3, 2022) ("COVID-19 vaccines remain the best public health measure to protect people from COVID-19 and reduce the likelihood of new variants emerging.").
[49] 28 U.S.C. § 1866(c).
[50] *See Moses,* 2021 WL 4739789, at *4 (finding that unvaccinated jurors would be likely to disrupt the proceedings); *see also Elias,* 2022 WL 125721, at *6 (same).

Case No. 1:20-cr-424
Gwin, J.

Unvaccinated individuals are more likely to become infected and more likely to experience serious illness if exposed to COVID-19.[51] Unvaccinated individuals are also subject to added quarantine recommendations. Under current CDC guidelines, all unvaccinated individuals must quarantine for 5 days after exposure to COVID-19 regardless of symptoms, while vaccinated individuals do not have to quarantine unless they develop symptoms.[52]

The increased infection risks and additional quarantine requirements for unvaccinated jurors could disrupt the trial. This case will involve witnesses traveling from other parts of the country. Any trial delays would require those witnesses to extend their stay in Cleveland, potentially affecting witness availability.

Excluding unvaccinated jurors is particularly important because the Court has limited ability to provide other safety measures. Other trials may occur at the courthouse on the same days as Defendant Cole's trial, meaning that spaces previously used for physical distancing are unavailable. The private nature of jury deliberations also prevents distancing or mask requirements.

The Court finds that calling only vaccinated jurors is necessary because unvaccinated jurors are likely to disrupt the proceedings.

IV. Conclusion

For the stated reasons, the Court **OVERRULES** Defendant Cole's objections to the jury selection plan and **DENIES** Defendant Cole's motion to stay proceedings.

---

[51] *COVID-19 Incidence and Death Rates Among Unvaccinated and Fully Vaccinated Adults with and Without Booster Doses During Periods of Delta and Omicron Variant Emergence — 25 U.S. Jurisdictions, April 4–December 25, 2021*, https://www.cdc.gov/mmwr/volumes/71/wr/mm7104e2.htm (last visited Feb. 3, 2022).
[52] *Quarantine and Isolation*, https://www.cdc.gov/coronavirus/2019-ncov/your-health/quarantine-isolation.html (last visited Feb. 3, 2022).

Case No. 1:20-cr-424
Gwin, J.

IT IS SO ORDERED

Dated: February 3, 2022     *s/     James S. Gwin*
                            JAMES S. GWIN
                            UNITED STATES DISTRICT JUDGE