

# European Adoption Consultants, Inc.

A Non-Profit, 501 (c)(3), Licensed Adoption Agency
HAGUE ACCREDITED

12608 Alameda Drive, Strongsville, OH 44149
(440) 846-9300 ~ (800) 533-0098 ~FAX (440) 846-1705
www.eaci.com ~ email: adopt@eaci.com

December 11, 2016

Olgierd Podgorski
Director of the Department of Family Policies
Ministry of Family, Labour and Social Policy
11 Nowogrodzka Street
00-513 Warsaw, Poland

Dear Director Podgorski:

In response to the questions to European Adoption Consultants, Incorporated ("EAC") contained in your letter of December 9, 2016, please consider the following information.

1. Preparation of ▮▮▮▮▮▮▮▮▮▮▮▮ for international adoption.

   From the beginning, ▮▮▮▮▮▮▮▮▮▮ desired to adopt one or two girls from Poland and were willing to accept children with many minor medical and social issues. Please see included copy of approved Adoptive Homestudy Update (dated September 13, 2014 from Children's Service Society, Salt Lake City, Utah, USA) and Roumpos letter to "Polish Officials" acknowledged in Utah, USA on October 17, 2014, many months before they traveled to Poland for adoption.

   In preparation for adoption, ▮▮▮▮▮▮▮▮▮▮ received training to promote a successful intercountry adoption. The training included a broad range of relevant adoption issues. The sources of the training were Adoption Learning Partners, a network of adoptive families, books such as "the Connected Child' by Karyn Purvis. This book helps families learn to build the bonds of affection and trust that will help the family deal with any learning or behavioral disorders. As a part of the homestudy process for ▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ MSW, LCSW, a professional social worker licensed by the state of Utah, verified the training and their homestudy worker discussed a broad range of relevant adoption issues with them. Please see again included Adoptive Homestudy Update. Issues addressed included those previously mentioned along with issues in adjustment, possible developmental delays and medical conditions of the child, and issues pertaining to raising an adopted child. In addition, EAC staff and social workers provided approximately ten additional hours of training and preparation of the family. Topics covered were the emotional and developmental risk factors, the impact of a child leaving familiar ties and surroundings, the intercountry adoption process, impacts of attachment and other emotional problems, health issues, developmental

GOVERNMENT EXHIBIT 1:20CR424 503

Olgierd Podgorski
Department of Family Policies
Ministry of Family, Labour and Social Policy
December 11, 2016
Page -2-

delays, and post adoption reporting procedures. EAC also provided pre-travel education about international travel and communicated with the staff in Poland as to continual support and care for the family during the required upcoming steps of the adoption process.

While the ▮▮▮▮▮▮▮ were in Poland, EAC and it's Polish representatives were in constant contact with the ▮▮▮▮▮▮▮ Please see included letter from ▮▮▮▮▮▮▮ nd letter from ▮▮▮▮▮▮▮ about the in-country attention to, and support of the Roumpos family and the adopted children. As for additional support provided to ▮▮▮▮▮▮▮ by EAC's Executive Director and other U.S. staff, please see discussion of post-adoptive decisions in response to question 3, below.

Regarding actions taken by EAC in connection with the difficulties being experienced by, and the concerns of the ▮▮▮▮▮▮▮ while in Poland and upon returning to the U.S,. please see our response to question 3, below.

2. <u>Informing Polish central authority regarding investigation of David Bearden, Police Department, Denton Texas.</u>

EAC's direct contact with the central authority of Poland is through National Adoption and Custody Centre - Children's Friend Society in Warsaw, which we believe is an agency accredited by the Ministry of Family, Labour and Social Policy for Polish adoptions. Mam Dom Foundation Center in Szczecin is the agency that was responsible for ▮▮▮ before she was adopted by ▮▮▮▮▮▮▮

Because there was evidence of old, healed injuries that occurred before ▮▮▮ adoption, we didn't think that the issues raised in Detective Bearden's letter regarding past sexual and physical abuse of ▮▮▮ and his report that there was evidence of healed injuries that were possibly "several years old," were reportable to the Ministry in connection with our adoption accreditation in Poland; however, we did think that it was important to tell someone in Poland what was suspected regarding ▮▮▮ pre-adoption care in Poland.

Immediately upon learning of ▮▮▮ ospitalization in August, 2016, I telephoned EAC's representative in Poland and a report was made to Mam Dom Foundation Center about the possible injury and abuse in Polish foster care. We went to Mam Dom Foundation Center because they are responsible for children in the region and we hoped to alert them to the problem so that other children in foster care might be protected. ▮▮▮▮▮▮▮ of Mam Dom Foundation Center then asked us to provide more details. Please see included ▮▮▮▮▮ etter in Polish and translated to English. We followed up on that by asking the investigating officer, Detective Bearden, to provide details of the injuries,

Olgierd Podgorski
Department of Family Policies
Ministry of Family, Labour and Social Policy
December 11, 2016
Page -3-

which he did by letter dated August 30, 2016. Please see included letters from Detective Bearden.

EAC then forwarded a copy of this report to National Adoption and Custody Centre, our direct contact in Poland and Mam Dom Foundation Center, the agency that was responsible for ▉ at the time she may have been injured. Please see included letters to Mam Dom Foundation and National Adoption and Custody Centre.

We (along with Detective Bearden) suggested that an investigation into abuse in Poland be conducted and naturally, we assumed that if necessary, National Adoption and Custody Centre and/or Mam Dom Foundation would forward this information to appropriate persons in the Ministry of Family, Labour and Social Policy and other agencies and law enforcement organizations in Poland. Perhaps our assumptions were incorrect, but we certainly made no attempt to conceal the information provided by Detective Bearden from the Ministry of Family, Labour and Social Policy or from anyone else.

3. Post-adoption decisions regarding ▉

Before describing activities undertaken and decisions made in this matter, it is important to note that ▉ and not EAC made all of the decisions regarding ▉ It is also important to note that so far as EAC is aware, there was no "illegal transfer" of ▉ EAC did not participate in the parental relinquishment or the subsequent adoption of ▉. The ▉ id that on their own and they retained competent legal counsel to represent them. Although we were not involved, we believe that the ▉ and the subsequent adoptive parents complied with applicable law in all respects. Please see included copy of final decree of adoption in Tarrant County, Texas USA case number 325-591568-16 verifying the legality and validity of the adoption by ▉.

Regarding the proceedings in Poland, although the adoptions by ▉ appeared to be going well initially, some time after completion, but while still in Poland, ▉ began to express their concerns about ▉ egular tantrums and masturbation. Upon learning of the problems, EAC began to help them address those concerns. Once a problem was identified, at first, we discussed possible relinquishment in Poland; however ▉ were not certain or in agreement that they did not want to parent ▉ so they decided to eliminate that from consideration. After that, the social worker assigned by EAC to talk with the ▉ LBSW, discussed relinquishment or a temporary placement for a period of time to see how the child adjusted and to allow the ▉ time to decide among themselves and make a

Olgierd Podgorski
Department of Family Policies
Ministry of Family, Labour and Social Policy
December 11, 2016
Page -4-

final decision about relinquishment. She suggested a family in Utah, ▇ ▇ of Nibley, Utah, a family in Texas, ▇ and a single woman, ▇ of New York, New York that could be approached about temporary care. In addition, there are several recognized adoption respite care organizations located throughout Utah that were available to provide temporary care if the ▇ for some reason, did not want to use the ▇ ▇. Please see included email messages between Margaret Cole, Executive director and ▇ discussing the situation and respite/temporary care.

Along the way, the ▇ decided that some sort of temporary care for ▇ would be appropriate while they decided what was best for ▇ and for their family. Although we had no confirmation from them, we felt that between ▇ there was some disagreement about what to do. Therefore, we also felt that having ▇ in temporary care while allowing them to work things out between themselves might result in them accepting ▇ into their family in due time.

In any event, because of their overall family situation, they did not want to return to their home with ▇ at that time and it seemed like they preferred to address the matter away from Utah because of their social situation. In that light, they decided that ▇ should be temporarily placed with the ▇. A major consideration for them was that the ▇ had a daughter that was approximately ▇ age. EAC staff then provided the Roumposes with the name, phone number and email address of ▇ ▇ reputable attorney that specializes in all aspects of adoption. See: http://www.▇

▇ retained Mr. ▇ for the purposes of accomplishing their desired temporary placement and any other adoption related matters. Once counsel was referred, EAC assisted with having powers of attorney signed for the temporary care and with escort services, but no longer consulted with the ▇ about their situation. We understand that eventually, they relinquished their parental rights to the ▇ and that several months later, in February, 2016, the ▇ adopted Maja.

Inasmuch as the ▇ made their decisions for themselves and their family, it is not possible for EAC report how those decisions were made by them, but it seems that that they reviewed the several options made available to them in the short time involved and that they then made their decision as to who and what they felt would be the best choice for themselves and for ▇

Olgierd Podgorski
Department of Family Policies
Ministry of Family, Labour and Social Policy
December 11, 2016
Page -5-

At this point, we would like to briefly address the situation with ▮▮▮▮▮. The ▮▮▮▮▮ve in Denton Texas and have a daughter approximately one year older than ▮▮▮. At the time, they seemed to be a good choice for temporary care of ▮▮▮ and if ▮▮▮▮▮ decided later, for adoption of the child. We think that ▮▮▮▮▮▮▮▮▮ selected the ▮▮▮▮ because their daughter was about the same age as ▮▮▮. Unfortunately, this past August, after they adopted ▮▮▮ the child was injured under circumstances that seemed to implicate ▮▮▮▮▮ however, at this point, he has not been formally charged with a crime and may very well be innocent of all suspected criminal acts. He has a clean criminal record, has no history of violence, has passed a polygraph (lie detector) test regarding the injuries to ▮▮▮ and there doesn't appear to be conclusive evidence even that a crime was committed. Please see included letter from ▮▮▮▮▮▮▮▮▮▮▮▮▮ attorney, letter from Behavioral Measures & Forensic Services Southwest, Inc regarding polygraph examination, and results of Mr. ▮▮▮ criminal records check.

As we reported to National Adoption and Custody Centre and Mam Dom Foundation over three months ago, the medical evidence seems to show that ▮▮▮ had healed injuries "in her vaginal area" that were possibly "several years old." This would mean that she had injuries that occurred while she was in Poland before her adoption by ▮▮▮▮▮▮▮▮▮▮▮. In addition, one of the things that troubled ▮▮▮▮▮▮▮▮▮ about ▮▮▮ was her masturbation. This of course, could be the result of her abuse while in foster care in Poland. We know that under the circumstances, it may difficult to rely on what the ▮▮▮ say, but they also report that ▮▮▮ referred to being injured in Poland, that she masturbated while she was with them and that her recent injuries were the result of her own actions.

Also included with this letter are the two most recent post-adoption reports (February 2, 2016 and June 2, 2016) for ▮▮▮▮▮▮▮▮ as prepared for ▮▮▮▮▮▮▮ by their Utah homestudy agency, Children's Service Society of Utah.

I sincerely and humbly submit that this explanation and the attached documents show that EAC acted ethically, within the law, and with the best interest of the children involved. Our support to the ▮▮▮▮▮ family was professional, caring, and comprehensive. This unfortunate and emotional case was quite unusual and thankfully, not one EAC or I have experienced before. I apologize that I did not contact the highest Polish adoption authorities about this matter, but during this critical time, my immediate intentions were to protect children and prevent any further abuse.

The ▮▮▮▮▮ family has gone through a very emotional time and EAC did all that it could to support them as shown by many of the included documents. The ▮▮▮▮▮ family also has endured a lot of emotional pain. What started out for them as an offer to assist the ▮▮▮▮▮ by providing respite care turned into a whirlwind of tragedies. Although the available information would


Department of Family Policies
Ministry of Family, Labour and Social Policy
December 11, 2016
Page -6-

show that most likely, no crime was committed, they still must deal with repercussions from the situation.

███ has endured more pain than any child should. Today, she is living with ███████ She appears to be happy, and has celebrated birthdays with friends. She still has bouts of uncontrolled temper, but she goes to school and is doing well. Please see included photographs. Both her ███████████████ are taking parenting classes and therapy so that that they can reunite the family as soon as possible and hopefully, help ███ lead a full and happy life.

I hope that we have addressed all of your questions regarding this matter. EAC does have current accreditation from Council on Accreditation for April, 2016 through April, 2020 and I will provide further information on that by separate letter. All of our other families are doing well and are current with post-adoption reports. Therefore, I ask that you please consider lifting the suspension of our license so that we can continue to serve families and children. EAC has completed 8,444 adoptions in 25 years and we really love this mission.

If you have questions any need additional information, please advise me at your earliest convenience.

Sincerely,

*Margaret Cole*

MARGARET A. COLE,
Founder and Executive Director